169  228
82a 284
82a 425
169  228
86a 453
169  228
106a ¹174
dl09a²366

MARGARET V. THORNTON *et al.*

*v.*

ALFRED B. LAWTHER *et al.*

*Opinion filed November 8, 1897.*

1. PRINCIPAL AND AGENT—*authority of agent to receive payment— when extended by implication.* Though authority to an agent to receive payment of a debt is not of itself authority to receive it before maturity, yet such authority may be implied from a known usage of trade or course of dealing in the particular employment, or from a prior course of dealing between the principal and agent.

2. SAME—*when authority to receive payment before maturity is properly implied.* Evidence that an agent had full authority from a non-resident principal to make loans on real estate, to use his own judgment, collect the principal at maturity or extend the time of payment, determine the length of loans, pass upon titles, pay taxes, make repairs, procure insurance, look after tenants, and, in general, to look after the principal's entire interests, without limitation by any writing, will warrant the implication that the agent had authority to receive payment of loans before maturity.

*Lawther* v. *Thornton*, 67 Ill. App. 214, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

MONROE & THORNTON, and HOYNE, FOLLANSBEE & O'CONNOR, (C. B. WAITE, of counsel,) for appellants.

MANN, HAYES & MILLER, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This suit originated in the Superior Court of Cook county on a bill to foreclose a mortgage. Appellee Lawther, the complainant below, by his agent, Charles W. Griggs, made a loan of $3000 to Margaret V. Waite (now Thornton) and Catherine V. Waite, which was evidenced by their promissory note dated March 1, 1888, for the amount loaned, payable to Lawther five years after date,

to which ten interest coupon notes, each for $95, were attached. To secure the payment of these notes a mortgage or trust deed of the same date was executed by Margaret V. Waite to Griggs, as trustee, conveying certain property owned by her. On March 14, 1888, she conveyed the mortgaged premises to her sister, Lucy Waite, (now Robinson,) who assumed and agreed to pay the indebtedness. On March 21, 1894, Lucy conveyed the property to Catherine V. Waite, who owned it at the time this suit was begun. On December 20, 1892, about seventy days before the maturity of the principal note, the amount thereof, with all interest due, was paid to Griggs as such agent of Lawther, and Griggs thereupon surrendered the notes and trust deed, the release being recorded December 20, 1892. The note was endorsed paid, the endorsement purporting to be signed by Lawther, but he testified that he had not so endorsed it nor had he given Griggs authority to do so. Griggs died April 7, 1894, prior to the commencement of this suit. After the payment of the money to Griggs, December 20, 1892, the property described in the mortgage was conveyed to the Northwestern Life Insurance Company as partial security for a loan of $10,000, and it claims a priority of lien over Lawther's mortgage. The court below sustained this claim and denied the relief prayed. The Appellate Court reversed that decree.

The decision of the case must turn upon the question whether the payment of the mortgage debt to the agent, Griggs, is valid and binding upon his principal, Lawther. Lawther, prior to 1887, had lived and done business in Chicago for many years, and for ten years Griggs had been his attorney at law and adviser in legal matters. In 1887 Lawther converted his property, or a large part of it, into notes, retired from active business and removed from Chicago. The same year he made Griggs his agent in Chicago to collect these notes, placed him in the control and management of his real estate there, and also

employed him to loan his money on real estate security.
Within two years he had placed some thirty loans, aggre-
gating $80,000. In making these loans Griggs found the
borrower, passed upon the value of the security and char-
acter of the borrower, fixed the rate of interest and the
time of the loan, examined the title to the security, drew
all the papers, made the mortgage to himself, as trustee,
and paid out the money. When the loan was closed he
did not send the papers to Lawther, but deposited them
in a safety-box vault to which he and Lawther both had
access. Griggs collected the interest coupons, and at
maturity either received payment of the loan or renewed
it, as he thought best, but when making renewals some-
times consulted Lawther, to ascertain whether he needed
the money for other purposes. From time to time he made
reports to Lawther of his acts and the condition of his
business, and about twice a year Lawther came to Chi-
cago, looked over the papers in the safe deposit vault and
made memorandums of them. Lawther never made any
formal delegation of authority to Griggs except in three
instances, where, as Lawther testifies, "it was thought
necessary." These instances were, to re-plat land and
bind Lawther for his share of the expenses, to deposit
money in the bank for Lawther, and to transfer stock
certificates. Griggs paid the taxes on Lawther's real
estate, made repairs thereon, looked after the wants of
tenants, procured insurance on buildings, paid out the
money expended in the construction of one large build-
ing, and generally looked after all his business interests
in Chicago. The evidence shows that at one time during
the agency of Griggs the latter wrote Lawther that he
had drawn a written contract concerning some real estate
and signed it for him, to which Lawther testified he made
no objection. He also testified that Griggs "did collect
money before maturity," and referred to several occa-
sions. He further stated that he acquired the knowledge
of such collections since the death of Griggs.

The limit or extent of the authority of the agency was not defined by any writing, but it is not claimed, as it certainly could not be successfully, that the agent did not, from the recognized scope of his agency and the manner of dealing between the parties, as shown by the evidence, have full authority to receive payment upon the mortgage loans when they matured. But the payment in this case having been made before the debt was due, the question still remains, did authority exist in the agent to so receive payment and thereby bind his principal?

It is well settled that authority to an agent to receive payment of a debt is not, of itself, authority to do so before it falls due. (Mechem on Agency, sec. 380, and cases in note 1; *Thompson* v. *Elliott*, 73 Ill. 221.) "But if there be a known usage of trade or course of business in a particular employment, or habit of dealing between the parties, extending the ordinary reach of authority, that may well be held to give full validity to the act." (Story on Agency, sec. 98,—cited and approved in *Thompson* v. *Elliott, supra.*) From the evidence in the record it appears that Lawther had reposed in Griggs a confidence and trust seldom found in the business world, for periods of a year at a time not seeing or knowing whether he had any securities whatever, and for long periods of time not knowing what disposition he was making of his property; giving him full authority to negotiate loans on real estate, and trusting implicitly to his judgment in all matters. He could collect the principal at maturity or extend the time of payment, as he saw fit. In making a loan he determined the time it should run; passed upon the title; was made trustee in the mortgage; retained possession of the papers during the life of the loan; yet, with all this authority conceded and its scope not limited by any definite writing or language, but in the most general way, with power to fix the date of maturity and lengthen or postpone it, with power to re-loan the principal when paid,—can it be reasonably said that the course of business and habit of

dealing between the parties did not so extend the ordinary reach of the authority of Griggs as to give validity to his act of receiving payment before the full maturity of the debt? We think not. The undisputed evidence fully justified the conclusion of the chancellor that Griggs had implied authority from Lawther to receive the payment, and we think the Appellate Court erred in reversing the decree.

The judgment of the Appellate Court will be reversed and the decree of the Superior Court affirmed.

*Judgment reversed.*