Sioux City Cattle Loan Company, Appellant, v. F. C. Lov-
rien et al., Appellees.

**PRINCIPAL AND AGENT:** Power of Agent—Authority of Agent to
1    **Receive Payment.** *Possession* of negotiable paper is by no means
the only legal evidence of authority to receive payment. The *con-
duct* of the indorsee of such paper may be such (1) as to show that
the original payee had express authority to receive payment, even
prior to maturity, and (2) as to induce a reasonable and justifiable
belief in the mind of the maker that the original payee had author-
ity to receive payment.

**VENUE:** Change of Venue—Fraud in Inception of Contract. A change
2    of venue from the county of suit to the county of defendant's resi-
dence, on a showing of fraud in the inception of the note sued on,
is proper, even though, later in· the trial, it is made to appear that
the note sued on was a *renewal* note, and that the fraud, if any, was
in the inception of the *original* note.

**PLEADING:** Issues, Proof, and Variance—Issue Rendered Immaterial.
3    The issue whether plaintiff or the original indorsee is the real owner
of the note sued on becomes quite immaterial, as far as the maker
is concerned, when plaintiff concedes that the note in his hands is
subject to any defense which would be good against said original
indorsee.

**EQUITY:** Innocent Parties—Who Required to Bear Loss. Principle
4    applied that, when one of two innocent persons must suffer by rea-
son of the wrongful act of a third person, that one must bear the
loss who made it possible for the third party to commit the wrong.

*Appeal from Humboldt District Court.*—D. F. Coyle, Judge.

APRIL 1, 1924.

REHEARING DENIED JUNE 28, 1924.

ACTION in equity, upon a note and to foreclose a chattel
mortgage securing the same. The facts are stated in the opin-
ion. From a decree dismissing the petition, the plaintiff ap-
peals.—*Affirmed.*

*Garfield & Garfield* and *Burgess, Gill, Sammis & Boylan,* for appellant.

*Lovrien & Lovrien,* for appellees.

VERMILION, J.—The plaintiff, Sioux City Cattle Loan Company, a corporation, brought this action in Woodbury County, to recover of the defendant Lovrien the amount alleged to be due upon his promissory note given to Maurice Degan, and to foreclose a chattel mortgage securing the same. It was alleged that Degan assigned the note and mortgage to the Live Stock National Bank before maturity and for value, and that the bank, on February 11, 1919, assigned the same to plaintiff for value. The defendant Lovrien answered under oath, admitting the execution of the note and mortgage, denying the other allegations of the petition, and alleging that the note and mortgage were procured by fraud on the part of Degan, and were without consideration; and moved to transfer the place of trial to Humboldt County, the place of his residence. This motion was sustained. Thereafter, the defendant Lovrien, by an amendment to his answer, denied that the plaintiff was the owner or holder of the note, or had the right to sue thereon. He denied that, if plaintiff was the owner or holder of the note, it acquired the same before maturity or for a valuable consideration, and alleged that it became such owner with full knowledge of the equities and defenses of the defendant. He further alleged that the note was given to Degan in the purchase of certain cattle from him; that Degan was at all times the agent of plaintiff, with the right and authority to act for plaintiff in connection with all matters growing out of such purchase, the giving of the note and mortgage and payment thereof, and was so held out by plaintiff; that, relying thereon, the defendant made full payment of the note and mortgage to Degan. It was further alleged, in substance, that Degan had been adjudged a bankrupt, and that, by reason of plaintiff's failure to notify defendant that it was the owner of the note, defendant was prevented from filing a claim against such bankrupt estate.

1. PRINCIPAL AND AGENT: power of agent: authority of agent to receive payment.

The defendant Lovrien by a cross-petition made the Live Stock National Bank a party defendant, and charged that the plaintiff and the bank were associated together in the buying and selling of cattle and so-called cattle paper; that it was the practice to have sales made and paper taken by Degan, and money furnished by plaintiff and the bank, whose names were used synonymously; and that Degan acted generally as the agent of both in the conduct of such business. The allegations as to the giving of the note and mortgage and the payment thereof were repeated, and it was alleged that the payments made thereon by Lovrien to Degan were by him turned over to the bank prior to the alleged purchase of the note by plaintiff; that a conspiracy existed between the plaintiff and the bank to defraud Lovrien by shifting said note from one corporation to the other and to injure his credit, and he asked damages on account thereof.

The plaintiff by reply denied any fraud in the inception of the note and mortgage, and alleged that it was a bona-fide purchaser and holder thereof for value and before maturity. Plaintiff and the bank denied the allegations of the cross-petition, and the latter denied any interest in the controversy.

Upon the trial, certain facts were established without dispute. It thus appeared that the active executive and managing officers of the bank and of the plaintiff corporation were the same individuals. The two corporations occupied adjoining rooms in the Live Stock Exchange Building in Sioux City, and did a large business in buying and selling negotiable paper given for the purchase of cattle. It was the general practice for the bank to buy such paper and resell it to the Cattle Loan Company. The latter sold to others much of the paper so bought, and, in some instances, bought paper from others than the bank. Maurice Degan was a live-stock broker, and also bought and sold live stock on his own account. He was a depositor in the bank. Degan sold large quantities of stock on time, taking the purchasers' notes therefor, secured by chattel mortgages on the stock sold, and sold a large amount of such paper to the bank, indorsing it or guaranteeing its payment. The bank or the Cattle Loan Company furnished Degan a statement each month of

the maturity of paper bought of him, and he procured renewals or settlement from the makers. He submitted to the officers of the bank a list of renewals procured, and they indicated such as they would purchase. Degan took up the paper maturing, giving the bank his check therefor, and he was given credit, as a deposit in his account, with the amount due him for such renewals as were accepted by the bank. The bank, as between itself and Degan, made no distinction in these respects as to paper still held by it and such as had been discounted to the Cattle Loan Company. Degan received payments on paper discounted at the bank, both those made by the makers and amounts realized from the sale in the stockyards of cattle mortgaged to secure the notes. These amounts he deposited in his account at the bank, and gave his own check to the bank for the amounts to be applied on the notes. Degan failed financially on or about April 2, 1919, and for some six months prior to that date, he had been retaining amounts so received by him, to be applied on notes held by the bank. To this the officers of the bank objected, in such instances as came to their knowledge.

On or about February 20, 1918, the defendant Lovrien purchased of Degan the live stock covered by the mortgage in suit, and on that day executed his note for $7,526.59, the purchase price of the cattle, direct to the bank, and secured it by a chattel mortgage on the purchased stock. The note, by its terms, came due June 20, 1918. On May 18, 1918, he executed a note to Degan for $7,843.67, secured by chattel mortgage on the same cattle, in renewal of the first note. The last named note drew interest from June 20, 1918, the date of maturity of the first one. On June 17th, Lovrien sent to Degan his check for $728.29. This check was turned over to the bank, and the amount of it indorsed by the bank as a payment on the renewal note, at the time the latter was accepted. The amount of the first note was paid by Degan to the bank, and he was given credit for the amount realized by the discount of the renewal note, before the payment was deducted. This renewal note was due December 20, 1918. On November 22, 1918, Lovrien executed the note and mortgage in suit, in renewal of those last mentioned. This note draws interest from December 20th, the date of maturity

of the former note, and was due June 20, 1919. On December 20, 1918, Degan paid to the bank the amount due on the maturing note, and discounted the renewal note to it, receiving credit on his account for the proceeds of the discount. The note was not thereafter in Degan's possession. By a check dated November 22d, Lovrien paid to Degan $800. On November 25th, Degan gave Lovrien credit for the amount on his books, indorsed the check to the order of the bank, and deposited it in his general account. The amount was never applied on the debt represented by Lovrien's notes. Various other payments were made by Lovrien to Degan after the transfer of the last note to the bank, and before its maturity, as to which the same thing is true. They amount to $3,600.58. After the failure of Degan and the discovery by the plaintiff and the bank that these amounts had been paid to Degan, and the discovery by Lovrien that they had not been applied on the note, the latter paid to the bank the amount that would have been due thereon, had they been so applied. This payment was made without prejudice to the existing rights of the parties. The ultimate question is whether the payments that were not applied to the note were received by Degan as the agent of the plaintiff. If so, the note is paid.

Other and collateral questions arise, which may be first disposed of.

The change of venue was properly granted, on the record then presented. Code Supplement, 1913, Section 3505, Paragraph 6. The exception in the paragraph next following, to the effect that no change shall be allowed when the issues can only be tried to the court, is expressly applicable only where the objection is to the inhabitants of·the county, or that the adverse party or his attorney has such undue influence over the inhabitants thereof that he cannot obtain a fair trial. The issue presented by the answer on file at that time came squarely within the terms of the statute. The fact that, as was subsequently alleged, the fraud relied upon was in the inception of the original note, of which the one sued on was a renewal, did not then in any manner appear. The case of *Cartney v. District Court*, 196 Iowa 36, is not, for that rea-

2. VENUE: change of venue: fraud in inception of contract.

son, in point. Moreover, the question arising on the change of the issue is raised for the first time in this court.

There is no sufficient evidence to sustain the claim of fraud in the inception of the note, and no effort whatever to establish facts that would warrant a recovery on the counterclaim.

The issue is presented by the pleadings that the plaintiff, the Sioux City Cattle Loan Company, is not the owner of the note; and the defendant Lovrien relies upon an estoppel, based upon that claim. After the failure of Degan, Lovrien received several communications upon the bank's stationery, and signed by officers of the bank, from which it appeared that the bank

3. PLEADING: issues, proof, and variance: issue rendered immaterial.

claimed to be the owner of the note. The bank at one time commenced suit on the note. The explanation is offered that these letters were so written and signed, as officers of the bank, by individuals who were also officers of the plaintiff, by mistake and in the confusion following Degan's failure; and that the bringing of suit by the bank was an error on the part of the attorneys, and the suit was dismissed on discovery of the mistake. The relations between the bank and the Cattle Loan Company were unquestionably very close. While they were separate corporate entities, owning separate assets, they were both managed by the same individuals. Upon the failure of Degan, the paper coming through him belonging to both concerns was put in the hands of an individual who was an officer in both, in the effort to straighten out the resulting difficulties. Under these circumstances, the explanation is not so unreasonable as to require a finding on the facts contrary to the positive testimony that the Cattle Loan Company acquired the note for value on February 11, 1919. In view of the concession of counsel for the plaintiff that it could make no difference in the rights and defenses of the defendant whether the bank or plaintiff owned the note, as any notice to the bank would be notice to the plaintiff, by reason of their interlocking officers and directors, we do not regard the question as one of controlling importance on this appeal. The concession is as broad as would be the effect of defendant's plea of estoppel, if established. The estoppel pleaded is that, by reason of the failure of plaintiff to

notify.the maker of the note that it was the owner of it, he, relying on the bank's ownership, did not file a claim against Degan's estate in bankruptcy. But, under the concession that any defense he had as against the bank was equally available against the plaintiff, it is clear that he is in no worse situation by reason of plaintiff's ownership of the note than he would have been if it belonged to the bank.

Upon the question of Degan's authority to receive payments on the note for the plaintiff, some further facts must be noted. Lovrien had had prior transactions with Degan, the bank, and plaintiff. In 1915, he had purchased cattle from Degan, giving his notes therefor, secured by mortgage. These notes were transferred, and the mortgages assigned, to the bank or the plaintiff. Notice of maturity was received by defendant from Degan, and renewals were taken by Degan, and likewise transferred to the plaintiff or the bank, and payment was made to Degan. In the winter of 1917, the defendant, who is an attorney, received from Degan the note and chattel mortgage of one Lehman, for collection. He testified that, in May of that year, he talked with Mr. Parker, who at that time was president of both the bank and the Cattle Loan Company, about the collection, and that the latter said, in substance, that he would have to see Degan; that Degan attended to the collection of the notes and mortgages which they received or purchased from him; that they had no knowledge about the condition of this collection; that all payments should be made to Degan, and his directions followed, as they attended to the collection of all such matters through Degan's office. On cross-examination, he testified that Parker said, when spoken to about the Lehman note, "That must be some of the Degan paper that we have bought," and that, on being told that it was, he said:

"You will have to see Mr. Degan about that. You make all your collections—all of your settlements and payments—to Mr. Degan. He handles all of that paper which we purchase from him."

It was conceded that the Lehman note was owned by the Cattle Loan Company; that it had matured, and been taken up by Degan with his check prior to this conversation, and the note

and mortgage surrendered to him. It was also conceded that, if Mr. Parker's testimony were taken, he would deny the statement of facts related by defendant as a witness, as to all transactions and conversations between them.

It is well settled that, if one owing money on a written instrument pays to another as agent, it is his duty at his peril to see that the one paid is in the possession of the obligation; or, if the latter is not so in possession, the debtor must show that the person to whom he pays has special authority to receive it. *Wolford v. Young,* 105 Iowa 512; *Townsend v. Studer,* 109 Iowa 103; *McCullough v. Reynolds,* 181 Iowa 1089; *Harrison v. Legore,* 109 Iowa 618.

But the possession of negotiable paper is not the only evidence of authority to receive payment. *Bissell v. Spring,* 179 Iowa 1005.

The sufficiency of payment to an agent will be sustained where the conduct of the holder of the note, or his manner of doing business, has been such as to fairly indicate that the agent had authority to receive payment, or to induce the dealer to believe that he had such authority. *Bissell v. Spring,* supra; *McCullough v. Reynolds,* supra.

It is urged that, the note being negotiable, and the plaintiff a bona-fide purchaser for value before maturity, it could be discharged only by payment in due course, and that payment in due course is payment to the holder at or after maturity. Code Supplement, 1913, Sections 3060-a88 and 3060-a119. It is also contended that the plaintiff was not required to accept partial payments or payment before due, and that payments so made by Lovrien to Degan were made at his peril. The plaintiff, while not bound to do so, could, of course, accept partial payments before maturity, and could authorize an agent to so do. *Harrison v. Legore,* 109 Iowa 618; *Thornton v. Lawther,* 169 Ill. 228 (48 N. E. 412); *Haughton v. Maurer,* 55 Mich. 323 (21 N. W. 426); *Bleser v. Stedl,* 135 Wis. 124 (115 N. W. 337).

The question is not alone one of the payment of a negotiable note to the payee before maturity, as against a holder in due course, but of payment to one alleged to be authorized by such holder to receive the payment. It is a question of authority,

actual or arising from the course of conduct of the holder, of the one to whom payment is made, to receive it for the holder. This consideration also, we think, disposes of the contention that, by his indorsement of the note in suit, guaranteeing its payment, Lovrien's liability was so enlarged that no defense would avail him except payment to the holder in due course. It is not a question of the extent of his liability, but whether by payment to Degan he discharged his liability, whatever it was.

The first payment in question was by check dated on the same day that the last renewal note, the note in suit, was executed, and it was received by Degan before the maturity of the previous note or the delivery of the renewal note to the bank. The next was made by a check dated on the day of maturity of the former note. Lovrien had made a former payment under similar circumstances, that was credited by the bank on the renewal note. In *Harrison v. Legore,* supra, it was said that ostensible authority may be conferred by recognition of a single act by the agent. The undisputed evidence is to the effect that, in the general course of dealing between Degan and plaintiff or the bank, he took up at maturity all paper sold by him to the bank. The latter, then, at no time had past due paper that had been discounted by Degan. Any payments received by him while the paper was in the hands of the bank or plaintiff must have been received at or before maturity. That he did receive payments before maturity which were applied on notes held by plaintiff or the bank is beyond question. His practice of watching for mortgaged stock coming on the market and collecting and so applying the proceeds thereof clearly so indicates, as does also the fact that officers of the bank made objection on the occasions when it was discovered that he had not promptly turned over payments made to him; for neither the bank nor plaintiff had, according to their claim that Degan took up all paper at maturity, any past due paper acquired from him to which such payments could have been applied, or concerning which they could have made such objection.

The conversation Lovrien claims to have had with Parker stands as denied by the latter; and, if the defense rested upon that alone, it would not, perhaps, find sufficient support. The

conversation, as claimed by defendant, related, in the main, to a note that Degan had taken up; but there is also a general statement concerning the paper discounted by Degan which is so consistent with what is shown to have been the general course of dealing between the parties as to give rise to a strong probability that it was made as testified to by Lovrien. It not only supports the contention that Degan had express authority to make collections on paper held by the plaintiff, but was of a character to induce in Lovrien the belief that such authority existed.

That the payments were made by Lovrien to Degan in good faith and in the belief that he had authority to receive them, cannot be doubted. The original note and mortgage had been given directly to the bank, and he knew that the renewals, though given to Degan, had been discounted to the bank. The first payment made to Degan had been applied by the bank on the second renewal note, and this was apparent from the amount of the note in suit at the time it was executed, and the first disputed payment made. The indorsements on the checks by which the payments were made showed that they had been turned over to the bank. It is true, Degan's indorsements of the checks to the order of the bank were equally effective and appropriate for their deposit to his credit as for their application to the notes; but Lovrien had no knowledge, until after Degan's failure, that they had not been properly applied as the indorsements, without more, indicated. These facts, together with his experience in former transactions with the parties, his knowledge of the general course of dealing, and the statement of Mr. Parker, warrant the conclusion that his belief in Degan's authority to receive the payments was reasonable and justified.

We do not overlook the fact that the officers of the two corporations deny that Degan had authority to receive payment on paper held by them; but the long course of dealing with respect to this and similar paper, their knowledge that during that time he had been receiving payments before maturity on such paper, and the fact that they objected to this only on occasions when he failed to turn over such collections promptly, are not consistent with the denial of his authority.

· Degan guaranteed the payment of the notes he discounted at the bank, and it is, of course, true that any sums received from the makers inured to his advantage; but, as we have said, the ultimate question is one of authority, and the fact that he was under obligation to pay the notes goes to the reasonable deductions to be drawn from the course of dealing, and does not, in and of itself, refute the claim that he was authorized to receive payment.

The facts in the instant case distinguish it from the case of *Bank of Montreal v. Ingerson,* 105 Iowa 349.

In cases of this character, reference is not infrequently made to the familiar rule that, when one of two innocent persons must suffer by reason of the wrongful act of a third party, that one

4. EQUITY: innocent parties: who required to bear loss.

must bear the loss who made it possible for the third party to commit the wrong. The plaintiff, by its conduct and course of dealing, having induced in the defendant Lovrien a well founded belief in Degan's authority to receive for it the payments in question, should stand the loss resulting from his misappropriation of the money so paid.

The judgment is—*Affirmed.*

Arthur, C. J., Stevens and De Graff, JJ., concur.