MILLIOUS, EXECUTOR, RESPONDENT, v. THOMPSON, APPELLANT.

(No. 7,034.)

(Submitted March 16, 1933. Decided April 17, 1933.)

[20 Pac. (2d) 1060.]

*Messrs. Speer & Hoffman,* for Appellant, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

*Mr. W. F. O'Leary,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal from a judgment foreclosing a mortgage upon residence property in the city of Great Falls.

The facts are that Charles Wegner listed the property for sale for $2,500 with C. H. McLean, a real estate dealer.

Through McLean's efforts, Lee Thompson and Sophie Thompson, husband and wife, inclined to purchase the property, but had only $300 in cash, while Wegner required a down payment of $1,000; Wegner was willing to take a mortgage to secure the remainder of the purchase price. In order to effect the sale, McLean interested Bernard Joyce, who, it seems, made McLean's office his business headquarters, although he did not have any fixed place of business. McLean and Joyce fixed the purchase price at $2,650, and the Thompsons agreed to purchase the property for that sum. The arrangement between McLean and Joyce was that Joyce should advance $700, which, added to the $300 the Thompsons had, would make up the payment required by Wegner. Joyce would take a deed from Wegner for the property, and execute to Wegner a mortgage to secure the remainder; and Joyce would then sell the property to the Thompsons upon the partial payment plan upon the terms hereinafter set out, which would enable him to get back the $700 advanced by him, plus $150 as compensation for advancing the $700. This was carried out. On June 8, 1928, Mrs. Thompson paid McLean $300 as a first payment on the property. McLean on June 11, 1928, paid to Wegner the payment required by him, less $125 commission for making the sale to Joyce, and Wegner executed and delivered the deed to Joyce, and Joyce executed and delivered to Wegner a promissory note for $1,500, payable on June 11, 1931, at Great Falls, with interest at 8 per cent., payable semi-annually according to six coupons for $60 each, attached to the principal note, and a mortgage securing the same. By a provision in the note the maker was privileged to pay the same, or any part of it, before maturity.

On the same day, June 11, Joyce and Sophie Thompson entered into an agreement in writing for the purchase of the property; the receipt of the first payment, $300, was acknowledged by Joyce. Mrs. Thompson agreed to pay to Joyce $850 more as follows: $20 on or before the eleventh day of July,

1928, and a like sum on or before the eleventh day of each and every month thereafter until the full amount of $850 should be paid, together with interest on deferred payments, and she assumed the Wegner mortgage. All payments were to be made at the office of McLean. Joyce agreed that, upon the performance of the terms of the contract by Mrs. Thompson, he would convey the property to her by good and sufficient deed.

Wegner did not know anything about the association of Joyce and McLean in the transaction, nor did he have any information concerning the agreement between Joyce and Sophie Thompson. McLean told Wegner within three or four days after the papers were drawn that Joyce had transferred the property to the Thompsons, but Joyce was responsible for the payments just the same, which would be made at his (McLean's) office. The Thompsons were then living on the property, and continued to do so throughout the entire period in question here. The Thompsons did not know who owned the property when they purchased it. Mrs. Thompson paid promptly all sums due upon the Joyce contract to McLean at his office, including the interest due upon the Wegner note, and eventually, as we shall see, the note itself.

Wegner at all times retained the note and the coupons attached thereto. As the coupons fell due, he presented them at the McLean office, and, it would seem, received the money thereon from McLean himself. Apparently Mrs. Thompson finished the payments due to Joyce in March, 1930, for during that month he executed and delivered to her a warranty deed conveying the property. On April 11, 1930, she paid to McLean $1,000 to apply on the Wegner note, and he gave her a receipt marked "On Wegner mortgage." On June 11, 1930, she paid McLean $400 as part payment on the Wegner note, and also money to pay the interest due that day. When Wegner presented the coupon, McLean gave him a check signed by himself for $460, which Wegner cashed. Joyce was not present, to Wegner's recollection.

On July 9, 1930, Mrs. Thompson paid McLean $100.65, for which he gave her a receipt which recited "in full for Mtg." McLean did not pay Wegner any part of the $1,000 and $100.65 payments made by Mrs. Thompson; he converted the money to his own use. About the 1st of April, 1931, Lee Thompson told Wegner all the money due on the note and mortgage had been paid, to which Wegner replied that he "would take care of it or look after it." Explaining why he did not see McLean immediately upon receiving this information, Wegner said there were two reasons: One was that the money was not due, and the other was that McLean was a friend, "and I didn't want to interfere with his bank account. I didn't need the money right then." Wegner testified: "This note was not due until the 11th day of June, and I knew McLean was doing a banking business up at the First National Bank. But when I asked him one time about that money, he says, 'The money will be all right.'" Wegner concluded to let the matter rest until the money was due; when it was, he went up to see McLean, who then confessed that he had appropriated it. Upon the trial, Wegner said he did not authorize McLean to collect any money for him "in this matter."

Joyce being dead and McLean unable to pay, Wegner resorted to his security, and on September 5, 1931, began this suit, making Sophie Thompson, Kathryn G. Cook, the administratrix of Joyce's estate, and another, parties defendant. Some time after the trial Wegner died, and his executor, Millious, was named party plaintiff in his stead. The case came on for trial before the court sitting with a jury. In answer to the question, "Was C. H. McLean the agent of Charles Wegner to collect the note and coupons described in the complaint?" the jury answered, "Yes." Upon motion of counsel for Wegner, the court set aside the jury's finding and made extensive findings of its own. Among others, the court found that McLean was Wegner's agent in selling the property; that Wegner knew Sophie Thompson had purchased the property and was residing thereon within a few days after June 11, 1928, and

that she knew Wegner owned a mortgage against the property; that Wegner at all times retained possession of the note and coupons, and surrendered the coupons to McLean as they became due, and they were paid by McLean; that, when the note became due, Wegner presented that to McLean for payment; that Wegner never authorized McLean to collect the coupon notes or the principal note, nor did he authorize the payment of the principal note before maturity; that Sophie Thompson purchased the property subject to the mortgage, but did not agree to pay the same, and the relationship of debtor and creditor did not exist between Thompson and Wegner; and that McLean was not the agent of Wegner to collect the money on the mortgage indebtedness.

Appropriate conclusions of law followed, one of which is that there is due the plaintiff as executor the sum of $1,100 and interest, and plaintiff is entitled to a foreclosure of the mortgage. A decree was entered accordingly, from which the defendant Sophie Thompson appealed.

Essentially the case turns upon the finding that McLean was not the agent of Wegner to collect the money on the mortgage indebtedness. It is true that Wegner had nothing to do with the sale of the property to Thompson, and that the relation of debtor and creditor did not exist between them. But Wegner knew that Joyce sold the property to Thompson immediately after he purchased it, and that Thompson had purchased the same subject to the mortgage.

While the notes were not made payable at the office of McLean, McLean told Wegner that the payments were to be made there, and throughout the entire transaction Wegner received them there—not only the interest, but $400 on the principal. As indicative of Wegner's attitude respecting McLean's authority, it appears that, even after he was advised by Thompson that the entire indebtedness due upon the mortgage had been paid to McLean, he did not give himself any concern about the matter. In fact, he was so gracious toward his friend McLean that, not needing the money immediately, he was satisfied to allow McLean to retain it until it became due.

Not at any time did Wegner by word or act repudiate the idea that McLean was his agent. He knew that the Thompsons were making these payments to McLean, and was satisfied until apprised of the astounding fact that McLean had appropriated $1,100 of the money to his own use.

The court found that Wegner did not authorize McLean to receive a payment on the principal note before maturity, but by the terms of the note it was payable at any time at the maker's option. An outstanding fact is that a year before the principal note was due Wegner received from McLean the $400 payment, and Wegner's actions after he knew McLean had received the balance of the money due upon the mortgage are highly significant. His testimony that he did not authorize McLean to collect note or coupons (without which the court's finding that McLean was not Wegner's agent for that purpose is without any foundation) is completely overthrown by Wegner's acts and his own contrary testimony.

Thus ostensibly McLean was Wegner's agent. Wegner by his conduct, the surrounding facts considered, by want of ordinary care caused Sophie Thompson to believe McLean to be his agent, if McLean really was not such. (Sec. 7933, Rev. Codes 1921.)

This case is very like *Security State Bank* v. *Soule,* 70 Mont. 300, 225 Pac. 127, not cited in the briefs and apparently not called to the attention of the learned trial judge, which we think is controlling in defendant Thompson's favor. Indeed, as respects payment of the principal sum, the facts are stronger in defendant's support than they were in the defendant's favor in the *Soule Case.*

The principle that, when one of two innocent persons must suffer by reason of the wrongful act of a third, that one must bear the loss who by his negligence made it possible for the third person to commit the wrong, is directly applicable here. (Sec. 8772, Rev. Codes 1921; *Lindblom* v. *Employers' Liability Assur. Corp.,* 88 Mont. 488, 295 Pac. 1007; *Sioux City Cattle Loan Co.* v. *Lovrien,* 198 Iowa, 296, 197 N. W. 914.)

The judgment is reversed and the cause remanded to the district court of Cascade county, with direction to enter judgment in favor of the defendant Thompson.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.