GLICK v. BRAMER *et al.*

1. **Agency:** UNDISCLOSED PRINCIPAL BOUND BY AGENT'S ACTS. A person engaged in the law and loan business made a loan to defendants, and took notes therefor payable to his brother. The brother was not known to defendants as a party to the transaction, but they had every reason to believe that the loan broker was himself the payee of the notes; for he transacted all the business, claimed to own the notes, and extended them from time to time, and defendants were not able to read them. *Held* that the acts and agreements of the broker must be regarded as made with the knowledge and consent of his brother, if indeed it was the latter's money that was loaned.

2. **Usury:** NOTES FOR MORE THAN DEBT. One of the notes in suit having been given in renewal of a prior usurious note, and calling for seven months' interest for six months' time, and, the other being for more than the debt, they are both *held* to be usurious.

*Appeal from Marshall District Court.*—HON. S. M. WEAVER, Judge.

FILED, OCTOBER 19, 1889.

ACTION to recover an amount alleged to be due on two promissory notes, and to foreclose a mortgage given to secure their payment. Defendants August and Mary Bramer admit the making of the notes, and the execution of the mortgage, but allege that the notes were usurious, and that the amount for which they were responsible thereon has been fully paid. The district court found for the defendants aforesaid, and rendered judgment in their favor for costs. Plaintiff appeals.

*Binford & Snelling,* for appellant.

*Brown & Carney,* for appellees.

ROBINSON, J.—Each of the notes in suit is dated October 1, 1884, and is payable to B. F. Kierulff or order at the office of I. N. Kierulff. One is for the sum of $86.50, payable six months after its date, with interest at ten per cent. per annum from September 1, 1884,

payable annually; and payments are endorsed thereon as follows : September 1, 1886, $16; December 23, 1886, $2⊖.60; January 24, 1887, $21. The other is for the sum of $400, payable six months after April 1, 1885, with interest at ten per cent. per annum from its date, payable semi-annually; and payment of interest to December 1, 1885, is endorsed thereon. Plaintiff purchased the notes in the summer of the year 1886.

I.  It is claimed by appellees that the notes in suit were taken by I. N. Kierulff, and in fact belonged to him; that they were unable to read the notes, and trusted to I. N. Kierulff to draw them; that they had no knowledge that the name of B. F. Kierulff was inserted in them as payee; that his name was not mentioned during the negotiations which led to the making of the notes, and that he was not known to them to be in any manner concerned in the transaction; that the notes were treated by I. N. Kierulff as belonging to him; and that he received payments, and extended them from time to time. Appellees also claim that the note for $86.50 was given in renewal of a note for a like sum, which was given about March 28, 1884, payable six months thereafter, for a loan of sixty-five dollars; and that the four-hundred-dollar note was given for a loan of three hundred and sixty dollars. There is much conflict in the evidence, but we think it fairly shows the following facts:   When the notes in suit were given, and when payments were made thereon, I. N. Kierulff was engaged in the business of practicing law and loaning money in Marshalltown.  His brother, B. F. Kierulff, was a physician, occupying an office in the same building. The offices of the two were separated only by a hall. Dr. Kierulff was not known to appellees as a party to the transaction, and said nothing to them about the notes until September, 1886.   I. N. Kierulff negotiated the loan, transacted all the business, claimed to own the notes, and extended them from time to time.  Appellees could not read them, and had no reason to believe that Dr. Kierulff was interested in them until after they were

<div style="margin-left">1. AGENCY: undisclosed principal bound by agent's act.</div>

purchased by plaintiff. I. N. Kierulff spoke about charges and commissions for making the loan and extending the notes, but it is evident that appellees understood him to mean compensation he was to receive in addition to the interest on the money. Appellees were not told, and did not know, that I. N. Kierulff claimed to be acting for his brother. In making the notes and payments in question, appellees supposed they were dealing with the real creditor in person; and the facts of the case are such that we think they were not guilty of such negligence as to prejudice their rights in the transactions involved in this action. In our opinion, the acts and agreements of I. N. Kierulff must be held to have been made with the knowledge and consent of his brother, if the money of the latter was really used to make the loan. See *Erickson v. Bell,* 53 Iowa, 627.

It appears that the note for $86.50 was given in renewal of a usurious loan which was made in the name of B. F. Kierulff in March, 1884. The **2. Usury: notes for more than debt.** amount of the original loan was sixty-five dollars, to which was added $1.65 at the time of the renewal. The note in suit provides for seven months' interest for a six months' loan. The amount for which the four-hundred-dollar note was given was three hundred and sixty dollars. We conclude that both notes are usurious.

II. It is contended by appellee that, if the notes are found to be usurious, he would be entitled to a judgment for $310.63. The amount of the loans represented by the two notes is $426.65. There is a conflict of the evidence as to a portion of the payments claimed to have been made by appellees. Some were made in notes payable to Dr. Kierulff, and some in notes payable to I. N. Kierulff to secure extension. Appellees did not know that any of the notes were made payable to the doctor, and supposed that all belonged to his brother. It is shown that appellees could not read English; that I. N. Kierulff always spoke of and treated the notes in suit,

and other notes given on account of them, as his property, so far as appellees had knowledge. In fact, there is much in the record to cause doubt as to the extent of Dr. Kierulff's interest in the notes in controversy; but, as they were payable to him, the burden is on appellees to show that he did not own them, and that, we think, they have failed to do. If he at any time had them in his possession, they were given to his brother for use when he desired them, and the latter was given the apparent right to make such arrangements in regard to them as he thought desirable. Of the payments claimed by the answer of appellees to have been made on account of the notes in suit, we find that the sum of $63.50, alleged to have been collected by I. N. Kierulff, has not been paid to him; that nothing should be allowed on a washing bill alleged to be due from I. N. Kierulff, for the reason that some credits seem to have been given on account of it, and the preponderance of the evidence shows that it has been settled. It is not clear that any allowance, therefore, should be made on the notes in suit in any event. We also find that appellees are not entitled to credit on the notes in suit for the $14.75 note, nor for the one for $47.75, as they are not shown to have been given as a part of the transactions involving the notes in suit; the weight of the evidence indicating that they were not so given. We find that credits should be allowed appellees to the amount of $283.54, including the endorsement admitted by appellant, and that there is a balance due the plaintiff of $143.11. Judgment and decree will be rendered accordingly.

REVERSED.