SOPHIA KLINDT v. W. J. HIGGINS AND MATTIE D. HIG-GINS, Appellants.

| 95 | 529 |
| 105 | 356 |
| 95 | 529 |
| 109 | 423 |
| 109 | 622 |

**Principal and Agent:** APPARENT AUTHORITY. The loan for which the note in suit was given was negotiated by one G. and was made payable at his office. Interest thereon was paid at that office; and was never again demanded. Plaintiff called there to get the interest and while she intended that G. should reloan the money when it was collected, never demanded the principal of him. G. collected both principal and interest without production of the note and converted the principal. *Held*, the makers of the note must pay it again to the holder. *Sax v. Drake*, 69 Iowa, 761, *distinguished*. *Englert v. White*, 92 Iowa, 97, *followed*.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

WEDNESDAY, OCTOBER 9, 1895.

Plaintiff brings this action in equity to recover upon a promissory note executed August 4, 1888, by the defendants, for eight hundred dollars, payable to Mariah Decker or order, on or before three years after date, "at the office of Theo. Guelich, in Burlington, Iowa, * * * with 8 per cent. per annum, payable annually," and for decree foreclosing a mortgage given to secure the payment of said note. Defendants answered, denying any indebtedness, and alleging that they had fully paid said note to Theodore Guelich, the agent and attorney for the owner of said note, duly authorized to receive such payment; also that the

plaintiff held said Guelich out as her attorney and agent for the purpose of receiving payment of said note, wherefore she is now estopped from denying such agency and authority. By way of cross petition defendants asked, upon the facts alleged, for the surrender and cancellation of said note and mortgage. Plaintiff, in answer to the cross bill, avers that she bought the note and mortgage from the administrator of Mariah Decker; that she retained possession thereof, "except when they were in possession of said Guelich, about August, 1892, when she left them for collection of interest." She denies that Guelich was her agent and attorney, except for the collection of interest, and denies that the note has been paid, or any part thereof, except interest. Decree was entered in favor of the plaintiff for seven hundred and twelve dollars and forty cents, including forty-one dollars and ninety cents attorney's fees, and for costs. Defendants appeal.—*Affirmed.*

*T. J. Trulock* and *Stutsman & Stutsman* for appellants.

*Power & Huston* for appellee.

Given, C. J.—I. There is no question but that the defendants did pay the full amount of the notes sued upon to Theodore Guelich. The sole contentions are whether Guelich had authority from the plaintiff to receive such payments, and whether, under the facts, the plaintiff is now estopped from denying that he had such authority. Theodore Guelich, an attorney at law, was engaged in the law, real-estate, loan, and collection business. He received sums of money left with him for investment, and invested the same in the name of his clients, keeping proper accounts thereof in his books. On August 4, 1888, he negotiated a loan of

eight hundred dollars to the defendants for Mariah Decker, taking from the defendants the note in suit, and a mortgage upon their homestead to secure the payment of the same. On August 4, 1889, defendants paid to Guelich, at his office, the interest to that date. On October 21, 1889, the plaintiff transferred to Mr. Guelich a deposit of one thousand nine hundred and fifty dollars, which she had in bank, for the purpose of having said money invested by Mr. Guelich for her. Of this sum Mr. Guelich made several loans for the plaintiff. Mariah Decker having died, the note in suit came into the hands of her administrator, who, desiring to have the money thereon, did, on the second day of December, 1889, indorse said note to the plaintiff, Guelich then paying to him eight hundred and sixteen dollars and seventy-five cents of said money of the plaintiff's therefor. On February 6, 1890, Guelich rendered a statement to plaintiff, showing the investments made by him of her money, including the Higgins note and mortgage. On, or soon after, the maturity of interest each year the defendants paid the same to Guelich at his office, taking his receipts therefor. They also paid to him sums at different times equal to the full amount of principal. Shortly before the maturity of the note they received notice from Guelich of the time it would mature, and on August 29, 1892, they paid to him, at his office, one hundred and seventy-two dollars, taking his receipt therefor. Plaintiff testifies that she was advised by others "to place my money with Guelich to loan,—to take care of it for me. I was to have seven per cent., and supposed he was to have all over that.   *   *   *   When I say I took my money to Guelich to loan, I did not mean he should keep it loaned always; that he should loan it out then." It is apparent that the placing of the money was left to the discretion of Guelich, that there was no limit as to

the time for which loans should be made, and that Gue-lich was to have all that he should receive over seven per cent. as compensation. The purchase of this note and the payments of interest were duly reported by Guelich to the plaintiff, and it appears that soon after the maturity of each year's interest she took the note with her, and called upon Guelich for the interest, as she says: "Because I knew the people got their money there, and they would go there to pay my interest, and I went to get it. * * * The persons that borrowed the money would pay the interest for the loan of the money; that Mr. Guelich loaned it to them and parties would go there to pay; and I went there to get my interest. I talked with Guelich about it." Guelich's books show the different transactions in account with plaintiff, the payments of interest and principal made by the defendants, and that the interest received, less one per cent., was paid to plaintiff; but it does not appear that Guelich accounted to the plaintiff for the payments of principal, nor that the plaintiff ever demanded or desired the payment of the principal. Plaintiff testifies: "I got the interest three times. I went there to the office to get it the first two years. I went the other years, but did not get it the last year. I didn't get it, but got it afterwards, as I have explained. I went for my interest two days after it was due, and Guelich said it wasn't there, and for me to leave my note. I went down again before he got my interest, and still he didn't have it, and then he sent the check." This, we understand, relates to the interest due August 4, 1892, while the final payment was not made until August 29. Plaintiff does not state, nor does it otherwise appear, that she demanded or desired that the principal should be paid to her. The fair inference from the testimony is that she intended that the principal should be reinvested by Mr. Guelich for her when it was paid to him; hence it is that Guelich, though charging himself with

the payments of principal made to him, did not turn the same over to the plaintiff. The note was not produced at the time either of the payments was made, but receipts were given therefor by Guelich. At the time of the last payment the note was in the hands of Guelich, but W. H. Higgins testifies: "I didn't see it. Guelich told me he would have Mrs. Klindt come to cancel the mortgage at the court house, and he would then give me the note and mortgage together. I asked him for the note. He said he had it. I called for it afterward. He said Mrs. Klindt had not been down, and told me to call again." He further testifies that Guelich wrote a postal card, which he (Higgins) mailed to Mrs. Klindt, to come down; that he saw Guelich afterward, and he said it was strange that she did not come, and that he would see her. This he says occurred just before Guelich's death. Mr. Higgins testifies to statements of Guelich's, made at the time the note was given, to the effect that he had charge of the collection of Mariah Decker's money, and that the money was to be paid to him. The plaintiff and the defendants were strangers to each other, and never met until after the death of Mr. Guelich, when plaintiff, learning from the books of Guelich that the principal had been paid to him, called upon the defendants. The defendants, Mrs. Bertha Smith, and plaintiff were examined as to what passed at this interview, defendants claiming that the plaintiff did not deny the authority of Guelich to collect the money, that she admitted that she knew that it had been paid, and that the note was in the hands of Guelich at the time of the last payment. We are satisfied from this testimony that plaintiff neither admitted nor denied the authority of Guelich, and that what she said as to knowing of the payment was because of what she had learned from the books of Guelich since his death. There is no question, we think, but that the note was in Guelich's hands at the time

of the last payment, and it was because of this fact that the decree was rendered for the amount appearing to be due upon the face of the note, less that last payment of one hundred and seventy-two dollars.

II. Plaintiff cites and relies upon *Englert v. White*, 92 Iowa, 97 [60 N. W. Rep. 224],—a case involving the question of Guelich's agency in a similar transaction to that under consideration. In that case the defense was payment to Guelich as the authorized agent of the plaintiff. The facts relied upon as establishing the agency were these: "That the note was payable at the office of Guelich. He alone demanded payment of it. His book of account shows that he was receiving the money on her account from various persons, and paying it to her, and on loans made for her." It was held that these facts did not establish the alleged agency. Appellants insist that this case is not authority on the question of agency, for that the facts are dissimilar. It is said that in that case Guelich received his commission from the borrower, while in this he received it from the plaintiff, the lender. In that case the borrower paid Guelich twelve dollars to procure the loan, while in this the borrower paid one per cent. interest greater than the lender required, which Guelich retained as his compensation. In the one case the borrower paid Guelich directly for procuring the loan, and in the other indirectly in the way of interest. Aside from this there is no distinction whatever in the facts of the two cases as bearing upon the question whether Guelich was authorized to receive payments of the principal. We think the defendants have failed to establish the alleged agency.

III. It is not questioned but that, if the plaintiff, by her conduct, gave the defendants reason to believe that Guelich had authority to receive payment of the principal, and that, acting upon that belief, they made the payments to him, the plaintiff will not now be

heard to deny that Guelich was so authorized. Plaint-
iff and defendants were entire strangers, and never had
any communication with each other until after the
death of Mr. Guelich. Defendants did not know who
held their note until they received the notice, from
Guelich, of the time it would fall due. They had no
reason to suppose that the owner of the note had any
knowledge of the verbal arrangements made with Gue-
lich at the time the note was given. The only facts
appearing that could have tended to lead defendants
to so believe is that the note was payable at Guelich's
office, and that they were never called upon to pay
interest after paying it to Guelich. That the note was
payable at Guelich's office did not authorize him to
receive payments, nor warrant the belief that he was
so authorized. That no demand was made for the pay-
ment of interest after payment thereof to Guelich, justi-
fied defendants in believing that the money had reached
the proper person. Possibly this fact might justify the
belief that Guelich was authorized to collect the inter-
est, but this we do not determine, as there is no contro-
versy as to the interest. Defendants had put their
negotiable promissory note into circulation, and made
payments upon it to Guelich without the production of
the note, and without any evidence of his authority,
other than that the note was payable at his office, and
that no demand was made for the payment of overdue
interest previously paid to him. These were not suffi-
cient reasons for believing that the owner of the note
had authorized Guelich to collect the principal. To
constitute an estoppel, the conduct of the plaintiff
must have been clearly inconsistent with the claim
which she now makes, namely, that Guelich had no
authority to receive the principal. *Lucas v. Hart*, 5
Iowa, 415. That she called upon and received the
interest paid to Guelich is not "clearly inconsistent"
with the claim that he had no authority to receive the

principal. Defendants cite *Sax v. Drake*, 69 Iowa, 761 [28 N. W. Rep. 423]. In that case the payments were made to Briscoe, the payee named in the note, without notice that the note had been transferred to Sax, and with knowledge, on the part of Sax, that Drake was making the payments under the supposition that they were good, and that he might pay Briscoe the principal when due. The court held that Sax intended to collect the whole note through Briscoe, but the difference in the facts of that case and this are apparent. Our conclusion is that the decree of the district court is correct, and it is therefore *affirmed*.