NETTIE B. LUSBY, Appellee, v. HERSHEY STATE BANK OF
MUSCATINE, Appellant, et al., Appellee.

JANUARY 17, 1928.

SUPPLEMENTAL OPINION DECEMBER 14, 1928.

*Tinley, Mitchell, Ross & Mitchell*, for appellant.

*Ferguson, Barnes & Ferguson*, for Nettie B. Lusby, appellee.

DE GRAFF, J.—The objective of this action is, in essence, the removal of an apparent cloud on the title to certain land which the plaintiff owns in fee simple, subject to certain mortgage interest presently noted. The cloud arises from the fact, as alleged by plaintiff, that certain interest due on the mortgage notes was

paid by her to the agent of the defendant-bank, and for this reason the bank, as principal, should be compelled to recognize the payment, which it refuses to do, on a denial of the pleaded agency.

The record discloses that one Levi Wing and wife, Mary, as title holders, executed, on April 27, 1922, to William R. Jayne a mortgage in the sum of $35,000 on certain Fremont County, Iowa, real estate. At said time three notes, aggregating $35,000, payable to William R. Jayne, were executed, due respectively May 1, 1923, 1924, and 1927. On April 14, 1924, Wing and his wife conveyed, by warranty deed, to plaintiff, Nettie B. Lusby, the land in question, subject to the Jayne mortgage, and also subject to a second mortgage of $12,000 to John Lingo, defendant, who is not involved on this appeal. Jayne indorsed his mortgage notes, without recourse, to the defendant-appellant, Hershey State Bank of Muscatine, and assigned the mortgage in blank to the said bank on May 2, 1922. The assignment was not recorded until June 19, 1924. Jayne was deceased at the time of the commencement of this action.

It is undisputed that the money representing this loan was furnished by the Hershey State Bank by honoring a draft drawn on the bank by Foskett & Nye, the local loan agents, and that the papers were sent to the bank by Jayne, as noted above. Jayne was a director of the bank, and its attorney. It is also shown that the plaintiff, without any knowledge or notice whatsoever of the assignment of the mortgage, paid an installment of interest ($2,275) on said mortgage on May 4, 1924, which installment Jayne never paid to the bank. This fact is the provocation of the instant suit.

The contention of the bank is that the interest which was paid to Jayne is still owed to the bank; whereas the plaintiff contends that payment to Jayne was payment to the bank, on the theory that Jayne was the agent or trustee of the bank, and that by reason of the course and conduct of the bank it is estopped to deny payment.

It is sufficient, for the purposes of this opinion, to state the findings of fact made by the trial court, and to announce our conclusion that these findings find ample support in the record. The trial court found and determined that the plaintiff did pay the sum of $2,275 as interest on said mortgage to William R.

Jayne, who was the person in whose favor the said note and mortgage were made; and at the time of payment the said mortgage stood of record in the name of William R. Jayne, and there was no record of the assignment of said mortgage, or anything which would indicate a transfer of the interest of said Jayne in said mortgage or notes to any person; that William R. Jayne was an official of the Hershey State Bank, and that he was the agent of the defendant-bank for collection, with full authority to collect the said interest on behalf of the bank, and that the payment of said money constituted a payment to said bank; that for a long period of time the said bank had made its loans in a large number of cases in the name of William R. Jayne; that in no case did the said bank take and record an assignment from the said Jayne to itself; that the said Jayne was authorized and directed by the bank to collect interest and principal on said loans as they became due, for and on behalf of the said bank; that the said Jayne, although taking such notes and mortgages in his own name, as payee and grantee, was acting for and on behalf of the said bank, as its agent and trustee; that to all intents and purposes the said bank knowingly allowed the said Jayne to deal with said notes and mortgages taken in his name as though they were his own personal property; that the plaintiff had no notice or knowledge that the said bank had any interest or claimed any ownership of the said note and mortgage, and that this was true at all times until after the said interest had been so paid to the said Jayne; that the said bank is estopped to claim that payment to Jayne was not payment to the bank, and is estopped to claim that the said Jayne was not the holder of said notes and mortgages; that the payment of the said interest in the manner it was paid denies to the said bank any lien upon the said land for the said interest; that the plaintiff had tendered all sums due under said mortgage to the defendant-bank as the same became due, and for said reason no interest shall be allowed to the defendant after maturity date; that, since she has tendered the full amount of the notes and mortgage, the defendant-bank is bound to accept said tender; and that the defendant cannot insist that the plaintiff pay, in addition to the amount tendered, the sum of $2,275 which had been previously paid to Jayne as interest due on the primary obligation.

The decree of the court canceled said mortgage as a lien on

said land as to the interest due on May 1, 1924, and ordered that the title in plaintiff be quieted, as against the bank; that the defendant be and is ordered to execute and deliver to the plaintiff a proper release, and give the plaintiff credit for the sum of $2,275, and, upon the payment to the clerk of the interest due under said mortgage and note on May 1, 1925, in the sum of $2,275, the said bank shall release the plaintiff from all liability for interest due on said date, and that the said land shall be discharged from any lien to secure the same; that, if the plaintiff pay to the clerk of the court, for the use of the Hershey State Bank, the sum of $35,000, the principal still due by reason of said notes and mortgage, the said land shall be discharged of the lien of such mortgage: and the said bank was ordered and directed, upon the payment of said sum to the court, to execute and file of record a release of said mortgage, and to deliver to the clerk for the plaintiff the said notes, duly canceled.

It is clear from the correspondence and from the bank's manner of doing business, not only with respect to the Wing loan, but many others, that the bank recognized the authority of Jayne, and the conclusion is inescapable that Jayne was acting as an agent of the bank. At this point it may be well to review briefly some well settled legal principles which have to do with the factual side of this case.

We recognize the rule that it is the duty of a debtor, in making payment of either interest or principal on a negotiable instrument, to know that the person to whom such payment is made has the instrument in his possession. In other words, the debtor pays at his peril, unless he demands profert of the instrument. However, this may not be said to be the controlling principle in all cases. The fact that a person to whom payment is made is not in possession of the security "is only evidence, although it may be controlling in a given case; to be weighed and considered in connection with all the facts and circumstances shown." 21 Ruling Case Law 23, Paragraph 17.

Under the facts in the instant case, whether or not Jayne had the possession of the security to be paid is not the ultimate question at issue. The question is whether or not Jayne, in receiving payment, had authority to receive it. This authority may be established by direct or circumstantial evidence. In *Townsend v. Studer*, 109 Iowa 103, it is said:

"The rule is that, if one owing money on a written instrument pays or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with has possession of the instrument, and, if not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the creditor to have such authority, although for some reason not in possession of the security."

Agency or express authority to receive payment of securities may be shown by other proof than possession of the securities, and to establish agency or express authority it is not essential that it be proven by any formal written instrument or special oral contract, but, like other questions of agency, it may be established from the mutual conduct and relations of the parties, or from the general nature of the transaction and the surrounding circumstances. See Case Note in *Campbell v. Gowans*, 23 L. R. A. (N. S.) 414, 415.

"The sufficiency of such payment will be sustained where the conduct of the holder of the note or his manner of doing business has been such as to fairly indicate the authority of the agent to receive payment, or to induce the debtor to believe that he has such authority." *McCullough v. Reynolds*, 181 Iowa 1089.

See, also, *Bissell v. Spring*, 179 Iowa 1005; *Sioux City Cattle Loan Co. v. Lovrien*, 198 Iowa 296.

The law of the case at bar is well settled. In the last analysis, it is a fact question that is presented, and in this particular we have sufficiently indicated our position. This case might well turn on the doctrine of an undisclosed principal. 2 Corpus Juris 880; *Glick v. Bramer*, 78 Iowa 568; *Shoemaker v. Ragland*, 202 Iowa 947; *Cheshire Provident Inst. v. Fuesner*, 63 Neb. 682 (88 N. W. 849).

It may be noted, in conclusion, that the plaintiff pleads that, by reason of the act and conduct of the defendant bank, it is estopped to deny that William R. Jayne was its agent for collecting the notes and mortgages, or that he had authority to accept money paid him. We deem it unnecessary to extend this

opinion by discussing the question of estoppel. For the reasons indicated; the decree entered by the trial court is—*Affirmed*.

EVANS, ALBERT, MORLING, and WAGNER, JJ., concur.

STEVENS, C. J., took no part.

## SUPPLEMENTAL OPINION.

PER CURIAM.—The decree of the district court provided for the payment of $2,275 interest, being interest up to May 1, 1925. It further provided that the plaintiff might pay to the clerk of the court $35,000 in addition thereto, and thereupon the mortgage would be released.

The plaintiffs failed to make this deposit with the clerk of the court, and the case was appealed, and was affirmed in this court on January 17, 1928. The modification sought under this application has reference to the interest charges. The district court gave the plaintiffs the opportunity to pay in the sum of $37,275, and thus release the mortgage. This, of course, was a recognition of the written tender made by the plaintiffs in their filings in the district court. In our opinion, the tender thus made would not protect against interest after the judgment entry in the district court. If plaintiffs now wish to avail themselves of the option in the original decree, they must pay $37,275, plus the interest at 6½ per cent from the date of the judgment in the district court to the date of payment. To the end that the plaintiffs may have the advantage of this option in the decree, they may exercise such option at any time within 60 days from the date of this filing, but they must then pay the interest, as above specified, from the date of the judgment in the district court to the date of payment.

If plaintiffs fail to exercise this option as above provided, defendant may foreclose its mortgage, and have interest from May 1, 1924, as provided in its contract.

Otherwise, the application for modification and rehearing is overruled.