GRACE M. CARR et al., Appellants, v. LILLIAN BENJAMIN et al., Appellees.
No. 38390.

DECEMBER 14, 1928.

REHEARING DENIED MARCH 15, 1929.

*George A. Lawrence, George S. Wright,* and *Addison G. Kistle,* for appellants.

*Fremont Benjamin* and *H. L. Robertson,* for appellees.

ALBERT, J.—Clark E. Carr was, for about 50 years, the owner of a 40-acre tract of land adjoining the city of Council Bluffs, and for many years prior to his death, which occurred February 28, 1919, the Robert B. Wallace Company, of Council Bluffs, was his agent. As such, it looked after this land, rented the same, collected the rent, paid the taxes, etc. On the death of the said Carr, he left surviving him his wife, Grace M. Carr, and a daughter, Julia, who was married to one Jackson. Under his will, Mrs. Carr and Mrs. Jackson became the owners of this property, and the Wallace Company continued to act as agent for the new owners, the same as it had acted for Carr.

Wallace Benjamin was a real estate dealer and broker in the city of Council Bluffs, and Lillian was his wife. Benjamin sought to purchase this tract of land, for the purpose of platting and selling the same as lots, and on October 17, 1919, he entered into an agreement with the Robert B. Wallace Company, to buy said tract of land in the name of his wife, for the sum of $18,000. At that time, he received a receipt, specifying the terms of the contract, which receipt recited that $500 was paid down, the balance to be paid as follows: $7,500 on the delivery of a warranty deed and abstract; $10,000 on or before five years from date, etc. The receipt further recited that it was given subject to the owners' approval, and, if it should not be approved, the $500 was to be refunded. This receipt in no way indicated who the real owners of the property were. The sale was subsequently approved by the real owners, and on November 8th following, the Benjamins paid to the Wallace Company $7,500.

It is apparent from the record that the deed was not forthcoming because of the fact that the will of Clark E. Carr had not been probated in Iowa. This matter was taken up, and later the will was probated, and the deal was closed about March 31, 1920. At that time, the Benjamins paid to the Wal-

lace Company the further sum of $2,320, leaving a balance due on the purchase price of $8,000, for which balance a note and mortgage were executed by the Benjamins to the Wallace Company, due in five years, as provided in the receipt. This $8,000 note was indorsed and forwarded to Mrs. Carr. The mortgage, after having been recorded, was in writing assigned to the Clark E. Carr estate; but the assignment was not recorded, but forwarded to Mrs. Carr, who was at all times a resident of Illinois. The land was platted, the plat being known as "City Acres," and a mortgage was executed, to cover all of the lots therein, numbered from 1 to 69. It provided for optional payments on any interest pay day, of $500 or any multiple thereof, and the mortgagees agreed to release any one or more of the lots upon the payment of $300 for each lot.

In a letter from the Wallace Company to Mrs. Carr, she was advised, among other things, that the purchaser might pay all cash, instead of $10,000 to run five years. Later, on March 31, 1920, she was advised by letter that the purchaser was unable to pay all cash, but would execute a mortgage and note for $8,000, instead of $10,000, as originally contemplated. In the same letter she was advised that the chances were that the purchaser would pay all of the mortgage within a year, although it was executed for five years, with interest payable semi-annually. From time to time, the purchasers paid interest about the time the same was due, which was in due time forwarded to Mrs. Carr, and she acknowledged receipt of the same. On August 26, 1920, there was $500 paid on the principal, and on September 30th following, $240 interest. This was duly paid to Mrs. Carr on October 7, 1920. On November 29, 1920, $1,000 was paid on the principal, which was included, with other funds, in a check which was paid to Mrs. Carr on April 13, 1921. This check included some interest which had been paid to the Wallace Company on March 9, 1921. On June 15, 1922, $1,500 was paid on the principal. On June 2, 1923, the Benjamins paid to the Wallace Company $4,950, which was then understood to be the balance due on said mortgage on that date, and the Wallace Company gave the Benjamins a receipt therefor. While this receipt recited that it was in full, in fact there was an error in calculation; for the amount paid lacked $100 of the amount actually necessary to pay said mortgage in full. The district

court entered judgment in favor of the plaintiffs for this amount, with costs, and this is of no further moment in the case.

The Wallace Company became insolvent, and Robert B. Wallace, president, died August 29, 1923. The $1,500 payment and the final payment were never forwarded or paid by the Wallace Company to the Clark E. Carr estate, and this action is to foreclose the aforesaid mortgage, claiming a balance due thereon of $6,500 and interest. The defendants' plea of payment raises the issues in the case.

It is settled in cases of this kind that the failure to record the assignment of a mortgage is not fatal to the rights of the holder thereof. This question was last and fully discussed in the case of *Shoemaker v. Minkler*, 202 Iowa 942.

The general rule recognized by this and all courts is that one who pays a mortgage and note, without knowing that the person to whom he pays has the possession of the same, pays at his peril; but the force and effect of this rule do not, however, conflict with another rule of this court, which has been repeatedly pronounced, which is that, if the payer is able to prove that the person to whom he made payment is the accredited agent of the holder, with power to receive such payments, then the holder is bound by payments so made; and here the burden of proof is upon the one making the payments. *Harrison v. Legore*, 109 Iowa 618; *Bissell v. Spring*, 179 Iowa 1005; *McCullough v. Reynolds*, 181 Iowa 1089; *Sioux City Cattle Loan Co. v. Lovrien*, 198 Iowa 296; *Zach v. Hershey State Bank* (Iowa), 217 N. W. 462 (not officially reported) ; *Burlington Sav. Bank v. Prudential Ins. Co.*, 206 Iowa 475. Under this line of cases, the right of the person to whom payment was made to receive the money may be proven by direct or circumstantial evidence, or it may be inferred from the course of dealing shown between the holder and the alleged agent.

The claim of the plaintiffs is that, when the land was sold, the deal closed, and the mortgage and note forwarded to Mrs. Carr, the agency,—which it is conceded existed before that time, —was ended, and thereafter the Wallace Company was not the agent of the plaintiffs.

We turn now to the record in the case for the facts involved. Many letters were introduced in evidence, constituting the correspondence between the Wallace Company and Mrs. Carr, rel-

ative to the matters herein involved. They are too numerous to be set out, and we can give only our conclusions, after a careful perusal of this correspondence. It shows that the Wallace Company was to collect and forward the interest as it became due, which was done. Thus far, there can be no question that an active agency existed. On August 26, 1920, $500 was paid on the principal to the Wallace Company, and forwarded to the plaintiffs, and received by them without objection. This payment was not in accordance with any of the terms of the mortgage. August 26th was not a date on which interest was due, so as to bring the payment under this provision of the mortgage, neither was it under the provision which provided for payment of $300 for each lot released; for, if one lot had been released, the payment would have been $300, and if two had been released, it would have been $600; so this payment must be said to be a payment on the principal, and did not come within the provisions of the terms of the mortgage.

On November 29th following, a payment of $1,000 was made to the Wallace Company, and by them forwarded to the plaintiffs. What has just been said about the $500 payment applies with equal force to this payment.

On April 21, 1921, plaintiff Mrs. Jackson wrote to the Wallace Company, calling attention to the Benjamin note, and asking the company to see that the interest was paid and forwarded to Mrs. Carr. On April 14th, Mrs. Carr wrote the Wallace Company, acknowledging the receipt of $1,225, $1,000 on the principal and $225 interest. No protest was made in this letter as to the payment of $1,000 on the principal.

In the case of *Harrison v. Legore*, supra, payments were made on the principal that did not come within the terms of the contract. With reference thereto we said (p. 623):

"But it is contended that, even though there might have been authority to receive payment of mortgage loans which had matured, it did not exist as to this one, since it was not due, nor was payment made at a time when the mortgagees were required to exercise their option of paying one hundred dollars or multiple thereof. True, the payment was made four days after the interest coupon matured; but the mortgagees, in their letter of October 18, 1892, had clearly intimated their willingness to receive more than the three hundred dollars on the debt before

its maturity, and had approved Head's [agent's] act in receiving that sum three months and twenty days after interest pay day. It has been held that ostensible authority may be conferred by the recognition of a single act of the agent, if sufficiently unequivocal. * * * [Citing authorities.] In view of the correspondence concerning the payment of this mortgage, the approval of the act of Head in receiving the previous payment of three hundred dollars before maturity, and at a time when the mortgagors might not insist on their option to pay, and the general course of dealing between the executors and Head, we are of opinion that the defendants had the right to believe Head was fully authorized to act for the plaintiffs in receiving payment. From our conclusion that Head had ostensible authority to act for the plaintiffs, it must not be inferred that we hold he did not have actual authority."

Without further specifically referring to the various letters that passed between these parties, we can reach no other conclusion than that, when this correspondence is viewed as a whole, and the showing of the relation between the plaintiffs and the Wallace Company is considered, the defendants have brought themselves within the rule above specified, to wit: that, under the proven facts, the Benjamins were warranted in believing that the Wallace Company had the right to collect this money, even though it did not have the evidences of the indebtedness in its hands at the time the payments were made.

But the plaintiffs insist that this conclusion ought not to be reached because of the fact that the Benjamins knew of no agency, supposing the Wallace Company to be still the owner of the evidences of the indebtedness. This contention arises from the following facts in the record:

This mortgage and note were both payable to the Wallace Company at its office in Council Bluffs. The Benjamins never knew, until after the death of Robert B. Wallace, that the note and mortgage had been transferred to the plaintiffs, and they paid the various sums under the assumption that the Wallace Company still owned them. Benjamin testifies that, in the sale of the lots, he looked up the records to see whether the mortgage had been assigned, and the records showed no such assignment. While, of course, this fact was not a defensive matter, it is a circumstance that should be taken into consideration in reaching

a conclusion herein. This identical situation existed in the cases of *Lusby v. Hershey State Bank*, 207 Iowa 147, and *Zach v. Hershey State Bank* (Iowa), 217 N. W. 462 (not officially reported), where, notwithstanding these facts, this court held that payments made to an ostensible agent were binding on the principal.

This disposes of the material questions in the case, and leads us to the same conclusion as that reached by the district court. —*Affirmed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.