JOSEPH J. MORON, Appellant, v. A. H. TUTTLE et al., Appellees.

No. 40445.

DECEMBER 13, 1930.

*T. C. Jones,* for appellant.

*Rufus W. Scott* and *Paul H. Cunningham,* for appellees.

ALBERT, J.—On June 16, 1917, A. H. Tuttle was the owner of Lot 20 in Block 17 in Farwell Place, an addition now included within the incorporated limits of the city of Des Moines, Iowa. On that date, he, with his wife, Cathrina J. Tuttle, executed and delivered to one B. J. Cavanagh a promissory note, secured by mortgage on said property, bearing the same date, for the sum of $1,400, payable June 16, 1922. This mortgage was duly recorded. On April 1, 1918, B. J. Cavanagh assigned this mortgage and note to the plaintiff, Joseph J. Moron. This assignment was placed of record on June 22, 1925. On June 3, 1918, Tuttle and wife conveyed this property to the United Improvement Company, subject to the aforesaid mortgage, and on September 14, 1925, the United Improvement Company conveyed it to J. L. Young, subject to the aforesaid mortgage. On June 3, 1922, a proper extension of this mortgage was made for a term of five years from June 16, 1922. This extension agreement, as well as the original instruments, called for payment at the office of B. J. Cavanagh. On June 16, 1926, Young paid to Cavanagh the full amount due on said mortgage, plus the interest, and on that date there was entered in the margin of the record where this mortgage was recorded, the following entry: "This mort-

gage is hereby satisfied and discharged, dated June 16, 1926. [Signed] Joseph J. Moron, by B. J. Cavanagh, his agent.'' The money thus paid by Young to Cavanagh was never turned over to the plaintiff, except as hereinafter explained; hence this litigation.

The evidence shows that, at the time of the assignment of this mortgage and note by Cavanagh, both instruments were turned over to the plaintiff, and have ever since been in his possession. It shows that the assignment of the mortgage and note was made before Young paid the amount thereof to Cavanagh. Cavanagh became insolvent, and left the state. When the plaintiff learned that Young had paid the money to Cavanagh, he obtained Cavanagh's address, and wrote to him at Kansas City, demanding payment of this mortgage and note. Thereafter Cavanagh, through a party in Des Moines, paid the plaintiff at one time $200, and at another time, $50. Appellees' contention is that the payment by Young to Cavanagh was made to a duly authorized agent of the plaintiff's and therefore the mortgage and note are paid. They further contend that the payments made by Cavanagh to the plaintiff of $200 and $50, respectively, amounted to a ratification of Cavanagh's act in receiving payment and releasing the mortgage. Appellant's contention is the negative of both of these propositions.

We have had so many cases of this kind within the past few years that the law is well settled on most of the propositions involved. So far as the agency proposition is concerned, the burden was upon the appellees to prove such agency. See *Whitney v. Krasne,* 209 Iowa 236, and cases therein cited.

In effect, the appellees concede, aside from their claim of ratification, that, if they are to make good their defense herein, they must establish the agency of Cavanagh to receive this money; otherwise, this defense must fail. This must be so because the evidence shows that at no time after the assignment of the mortgage and note was either of them in the hands of Cavanagh, but they were at all times in the hands of the plaintiff. A party, then, attempting to pay this mortgage did so at his peril. But to this rule there is an exception in a line of cases commencing with

*Harrison v. Legore,* 109 Iowa 618, which exception is explained in *Carr v. Benjamin,* 207 Iowa 1139, where we said:

"The general rule recognized by this and all courts is that one who pays a mortgage and note, without knowing that the person to whom he pays has the possession of the same, pays at his peril; but the force and effect of this rule do not, however, conflict with another rule of this court, which has been repeatedly pronounced, which is that, if the payer is able to prove that the person to whom he made payment is the accredited agent of the holder, with power to receive such payments, then the holder is bound by payments so made; and here the burden of proof is upon the one making the payments."

This question was later discussed in *Kann v. Fish,* 209 Iowa 184. It had been previously discussed among our later cases in *Wood v. Swan,* 206 Iowa 1198; *Lusby v. Hershey State Bank,* 207 Iowa 147; *Zach v. Hershey State Bank* (Iowa), 217 N. W. 462 (not officially reported); *Ritter v. Plumb,* 203 Iowa 1001; *Shoemaker v. Minkler,* 202 Iowa 942.

If the judgment of the lower court is to be sustained on this phase of the question, the record must show by a preponderance of the evidence that Cavanagh was the agent of the plaintiff, and authorized to receive this money from Young at the time he did receive it. We turn to the record to see whether this burden has been sustained.

To prove this agency, the first contention of the appellees is that the fact that this money was payable at the office of B. J. Cavanagh shows the contemplated agency to be proven.

The force and effect of making the instrument payable at the office of a certain named person does not depend upon the character of that office. We held in *Lazier v. Horan,* 55 Iowa 75, that, where a note is payable at a bank in a given town at its maturity, and the maker deposits the amount due on the note with the bank for the purpose of paying said note, it is payment, and the bank is the agent of the holder to receive payment in accordance with the terms thereof.

In *Callanan v. Williams,* 71 Iowa 363, a mortgage and note were payable at the office of N. B. Moore, a real estate agent, and we held that the deposit of the money with such real estate agent was not payment. In other words, the person at whose named

office a note is payable is not the agent of the holder of the paper.

In *Englert v. White,* 92 Iowa 97, one Guelich was engaged in the law, real estate, loan, and collection business. As such agent, he made a loan to Englert, taking a promissory note and a mortgage on real estate to secure the same. The note was payable at the office of Guelich. We there said:

"Nor did the fact that the note was made payable at the office of Guelich authorize payment to him. He was never known as a banker, and his business did not justify the presumption that he was expected to receive the money."

In *Klindt v. Higgins,* 95 Iowa 529, we had a set of facts very similar to those in the case at bar. Guelich, the party making the loan in the *Klindt* case, was evidently the same person who made the loan in the *Englert* case, and the conclusion reached was the same as that reached in the *Englert* case.

In the case of *Bank of Montreal v. Ingerson,* 105 Iowa 349, we reviewed the case of *Lazier v. Horan,* 55 Iowa 75, and said:

"The great weight of authority is against that rule, and we are constrained to say that it does not appear to us to be well founded in reason. The specifying, in a bill or note, of a place of its payment, is for the convenience of the parties to it, and does not alone create an agency in the person who does business at the designated place to receive money for the holder of the paper. * * * that is, it designates a place where payment may be made * * *. The effect of the conclusion we reach is to overrule so much of the case of *Lazier v. Horan* as is not in harmony with what we have said."

It will be noticed that the effect of the *Bank of Montreal* case is to destroy the line of distinction between banks and other offices that had theretofore existed in our opinions, and to make the same rule apply to banks as to any other office as a place of payment. The same doctrine is announced in *Huismann v. Althoff,* 202 Iowa 70.

It will be noticed that, in the *Bank of Montreal* case, the collection was made before maturity, and in the absence of the note; but the opinion seems to give little weight to these facts. We conclude, therefore, that the fact that this loan was payable

at the office of B. J. Cavanagh is not evidence, in itself, to establish that Cavanagh was the agent of Moron to receive this money.

It might be said also, in passing, that we have announced the rule that authority in an agent to receive interest accruing on a promissory note does not embrace authority to receive the principal. *Huismann v. Althoff*, 202 Iowa 70. This case also announces the rule that the naked showing that the payee of a promissory note received from the bank, or from an official thereof, payment of the note of a third person, creates no presumption that the payee had expressly or impliedly authorized the bank, or its officials, to receive such payment on the said payee's behalf.

Also, the fact that interest payments were received by the plaintiff from Cavanagh is not, in itself, sufficient to establish an agency, although it may be a circumstance to be considered in determining that question. The letter from the plaintiff to Cavanagh authorizing the extension of the mortgage is only a specific delegation of power to Cavanagh to extend the mortgage; and while it might be an agency to that extent, it is limited to the power conferred by the letter, and does not establish a general agency to in any way receive payment of the principal.

Appellees rely largely on a letter written by the plaintiff to Cavanagh, in the following words:

"I write to say that the interest on the note, given by A. H. Tuttle and Cathrina Tuttle, was due June 16th, and is still unpaid. Also wish to say that I should like the note paid by August 1st of this year."

The plaintiff testifies that this letter was written in 1927, and the wording thereof shows that it was after June 16, 1927. This was, therefore, after the principal sum of the mortgage was due, and also more than a year after the payment was made by Young to Cavanagh; and it can in no way be used to establish the fact that Cavanagh was the agent of the plaintiff on the 16th day of June, 1926, to receive payment of the principal of this mortgage and note, because it was written more than a year after the latter date.

We have studied this record and reviewed all the transac-

tions between these parties, including the correspondence on which the defendants rely, and reach the conclusion that the defendants have not sustained the burden of proof of establishing that Cavanagh was the agent of Moron in receiving payment of the balance due on this mortgage and note.

We still have the question of whether or not the plaintiff, after learning all of the facts, ratified the action of Cavanagh in receiving payment of the mortgage and note. This claim of ratification rests largely, if not wholly, on the  fact that, when the plaintiff became conversant with all of the facts, he wrote a letter to Cavanagh at Kansas City, demanding the money due on this mortgage and note, and in a later letter, written by the plaintiff to Cavanagh on August 6, 1928, he said:

"I received a letter from you, dated July 10th, in which you informed me that you would pay me the money, $1,400, before August. Please send me a check or draft for the amount due June 16th because I am making preparations to leave this country to go to Hancock, Michigan," etc.

In addition to this is the fact that Dyer, in behalf of Cavanagh, paid to the plaintiff, on February 4, 1929, $200, and on March 13, 1929, $50, the same being paid from money belonging to Cavanagh. The question is: Do the subsequent acts and conduct of the plaintiff, after learning of the facts, constitute a ratification of the payment by Young to Cavanagh, thus relieving defendants from further liability on this indebtedness?

This doctrine of ratification has been largely discussed in so many of our cases that we do not stop to cite them. It is bottomed first on the proposition that no agency in fact existed to do the thing which was actually done. True, a person who assumes to act as agent, must purport to be the agent of the alleged principal, and what he does must purport to be done in the name of or on behalf of such principal. If he does not pretend or assume to so act for another, no ratification can be based thereon. When the above condition exists, and the alleged principal has full knowledge of all of the facts, and he receives the beneficial results of said act, then the law implies a ratification of the unauthorized acts of the third party. We have repeatedly

announced these rules through a long line of cases commencing with *Mathews v. Gilliss*, 1 Iowa (Clarke) 242, and ending with *Huismann v. Althoff*, 202 Iowa 70.

Under these rules, and the facts in this case, did plaintiff ratify the act of Cavanagh in receiving payment of this mortgage and note in full at the time he did receive it, and make Cavanagh his agent from that time forward? We are disposed to think and to hold that the plaintiff, by his acts and conduct, did not ratify this payment to Cavanagh. It is to be remembered that the written assignment of the mortgage and note from Cavanagh to the plaintiff was on record in Polk County records before this payment was made. This was notice by the plaintiff that Cavanagh no longer had any interest whatever in said mortgage and note, and that the same were then owned by the plaintiff; and with this knowledge on Young's part,—which the law imposes upon him,—when he went to pay this mortgage and note, he should pay them to the then owner, who was the plaintiff. When he went to Cavanagh to pay the same, Cavanagh did not have the mortgage and note in his possession, and Young did not require a production and surrender of the same; and, therefore, under the repeated pronouncements of this court, he paid at his peril. Young having paid this money to Cavanagh, just what is the relation between Young and Cavanagh? If any agency existed here, it must be that Cavanagh held this money as the money of Young, to be later paid by Cavanagh to the plaintiff. Before Cavanagh parted with this money, there is no doubt that he (Young) could have maintained an action against Cavanagh to recover the same. The money in Cavanagh's hands, therefore, so long as it remained there, was the money of Young, and not the money of the plaintiff. Did the plaintiff, by receiving a part of said money from Cavanagh, ratify the act of Young in paying the same to Cavanagh? We do not think he did. To illustrate: If A gives money to B to pay an indebtedness owed by A to C, and B pays only part of that money to C, we are unable to see how the receipt of a part of the same by C from B satisfies the total indebtedness owed by A to C. This simplified statement is a statement of the question involved in this case.

It is argued, and the lower court held, that the general rule is that, when one of two innocent parties is to suffer, the one who makes it possible for the injury to occur is the one who

should be the loser. This doctrine has no application to the case before us, and if it did, Young's payment of the money to Cavanagh, under the circumstances of this case, was the cause of the loss herein.

We conclude, therefore, that the defendant has not made good on either of his defenses made in the case, and plaintiff is entitled to recover, as prayed in his petition.—*Reversed.*

MORLING, C. J., and STEVENS, FAVILLE, KINDIG, WAGNER, and GRIMM, JJ., concur.