IN RE ESTATE OF HANNAH THORNWALL.

RECONSTRUCTION FINANCE CORPORATION, Appellant, v. MARTIN H. TROUP, Executor, Appellee.

No. 46100.

June 15, 1943.

Lee Walker, Stephen R. Chummers, and M. O. Hoel, all of Chicago, Illinois, and Wm. F. Riley and Carr, Cox, Evans & Riley, all of Des Moines, for appellant.

George Faul and Faul & Grant, of Des Moines, for appellee.

Mantz, J.—This is a proceeding in probate, wherein the Reconstruction Finance Corporation, on September 26, 1939, filed a claim against the estate of Hannah Thornwall, deceased, and asked that same be allowed as a claim of the third class, basing said claim upon two promissory notes made and delivered by Hannah Thornwall, decedent, to the Farmers State Bank of Maxwell and later assigned to the claimant. One note was for $1,500, dated April 27, 1932, due in six months, with seven per

cent interest until due and thereafter eight per cent. Claimant alleges that on September 15, 1939, there remained unpaid on principal $150, with unpaid interest amounting to $442.35, a total due of interest and principal of $592.35. The other note was for $3,900, dated October 10, 1932, due in six months with seven per cent interest until due and thereafter eight per cent. Claimant alleges that on September 15, 1939, there remained unpaid on principal $3,600, with unpaid interest amounting to $2,114.19, a total due of principal and interest of $5,714.19. Copies of these notes were attached to the petition. The executor filed no written answer or resistance to the claim.

The probate court referred the claim to Dring D. Needham, referee in probate in and for Polk County, Iowa, who, after hearing the evidence, filed with the court on September 4, 1941, a written report in which he held in effect that on October 26, 1939, the executor of the estate, Martin H. Troup, on the one hand, and claimant on the other, had entered into an agreement wherein said claim was to be settled and compromised by the payment of the sum of $1,117.92. He further held that there was no further liability thereafter on the part of the estate. Due objections and exceptions were filed by claimant to this report. This report, together with the exceptions and objections, was reviewed by the court; and thereafter and on February 26, 1942, the district court overruled said exceptions and objections and confirmed the report of the referee holding that claimant was not entitled to claim in excess of $1,117.92 without interest. Costs were taxed to the claimant and appeal was taken to this court.

In the further discussion of this appeal the claimant, Reconstruction Finance Corporation, will be referred to as the RFC.

We will make a brief outline of some of the facts in order to obtain an understanding of the matters involved herein. Hannah Thornwall, maker of the notes involved herein, died testate a resident of Polk County, Iowa, on February 27, 1939. Her will was probated on April 4, 1939, and thereunder Martin H. Troup was appointed executor. He qualified and is still acting in that capacity. Hannah Thornwall left six children, all adults. There were three daughters, Gertrude, Esther, and Emma, and three sons, Henry, Harry, and Wilbur. At her death she owned 180

acres of land in Polk county but no personal property. To Henry she devised an 80-acre tract, and the balance to her six children share and share alike. Under this will Henry received .538 per cent of the real estate.

Hannah Thornwall made, executed, and delivered the notes involved; they are now held by the claimant; they are unpaid, and the amounts set forth, principal and interest, as being due thereon, are matters not in dispute. It is a liquidated claim and was filed September 26, 1939.

On October 26, 1939, a Mr. Graham, a representative of claimant, had a conference with the executor at his office in Maxwell, Iowa. It concerned the claim filed. During a part of the conference Henry Thornwall was present. Following the discussion Mr. Graham left, and on February 10, 1939, a draft for the sum of $1,117.92, made payable to claimant, was mailed by the executor, and in the letter accompanying the draft Troup stated that the draft was considered as a full and final settlement for the release of the claim. The claimant refused to accept the sum sent as payment in full but did offer to apply the same on the claim and returned the draft to the sender. At that time the total due on said claim was $6,306.44.

The executor makes the claim that Graham, the representative of the claimant acting in its behalf and with its authority, entered into a binding agreement with the executor and Henry Thornwall to compromise and settle the claim for the sum of $1,117.92, and that the draft mailed to claimant by the executor on February 10, 1939, was in full payment of said claim.

In essence, the executor claims that Graham, as a representative of claimant, was an agent of said claimant, with power and authority to settle and compromise the claim, and that he did so and that the claimant is bound thereby; also that there was consideration for said agreement.

The burden of proving this defense is upon the executor. He filed no pleading controverting said claim and raised his contention in argument. The principal issue herein is whether he has shown the matters necessary to establish his resistance.

During the trial of the case, when the authority or status of Graham was under consideration, the parties entered into the following stipulation:

"Graham is a field representative of the Reconstruction Finance Corporation; his duties consist of collecting indebtedness and receiving payments on account of any notes held by the corporation."

The executor does not challenge the validity of the claim; he contends that it has been compromised and settled and that claimant is concluded thereby. The claim was filed within the six-months' period following the opening of the estate.

Graham came to Maxwell on October 26, 1939, and there talked over the matter of the claim with the executor. The record is silent as to how Graham happened to come to Maxwell. There is no evidence to the effect that Graham then had possession of the two notes. Graham was not a witness in the trial of the case, and so far as the record shows he made but the one trip. Troup testified that Graham represented himself to be a representative of the RFC. He further said that up to that point he knew nothing about what the compromise was between the Thornwalls and the RFC. Troup says that he had some of his own figures which he and Graham went over, and these showed a settlement was being discussed wherein $850 was on the notes, $254.72 on interest, a total of $1,104.72, and that Graham wanted to know when they could pay it. He recalled that Henry Thornwall was called in and he said, "We can't pay it until we get our corn in and sealed," and he told him as near as he could when that time would be. There was some delay in sealing the corn and Henry Thornwall came in on February 10th. The executor states that Graham had left with him (Troup) a notation that the accumulating interest would be twelve cents per day and they figured interest from October 26th to February 13th as $13.20, or a total sum due on the settlement to claimant of $1,117.92. He states that he sent this in but that claimant returned it and refused to accept it in settlement of its claim.

The executor testifies that when he remitted the $1,117.92 to claimant he wrote a letter to claimant enclosing the draft.

He states that in this letter, "I asked that we consider this as a full and final settlement and for a release, but it wasn't accepted, except that they would accept [it] as applying. We objected to that applying when it was to constitute a full settlement." He further said that he was "assuming" that there was a full settlement arrived at. He said, "It was my understanding that that amount was to be a full compromise settlement."

Henry Thornwall, as a witness for the executor, says of the talk of October 26th with Mr. Graham, "who represented the RFC":

" * * * Troup was also present. It was a general conversation, so when we took it up and he brought the amount that he owed, so he went on to state that he figured out what our interest was. I think our sum was something like around. $800. I believe the principal and interest made up the difference. So then we told him the time we could make settlement and they figured the amount of the check eleven hundred something, I can't recall. When I say 'we' I refer to the estate's indebtedness. I have to talk for the estate. We were trying to get this settled and out of the way. * * * We didn't get any response whatever when the check was mailed in to the office in Chicago. We didn't know that they accepted the check until Mr. Bale' came out. We took for granted that Mr. Graham was the representative of the claimant's office. The basis for any agreement was just the amount that we owed prior to that time. By we, I mean it is really us boys * * * This is the estate debt, but what I am after is us boys agreed to pay the compromised amount and when they refused to accept that I told Mr. Bale we were out of it, they would have to go through the estate if they wanted to get the balance we owed them."

The record shows that Mr. Bale was an employee of the claimant as a field representative and examiner. As a witness he testified that the field representative had no authority to make agreements on behalf of the corporation. He stated that he had been with the corporation six years and knew of no instances where a field representative had entered into binding agreements on behalf of the corporation.

It will be noted that there was but one meeting when Graham was present. The two witnesses for the executor were the executor and Henry Thornwall. The latter, under the will of his mother, was devised .538 per cent of the real estate. This real estate was liable for the entire debt represented by the two notes. The executor and Henry Thornwall were evidently acting together in the settlement attempted. In the evidence dealing with that matter the terms "compromise and settlement" are used several times. This offer amounts to about seventeen per cent of the claim.

It is well to keep in mind that the burden was upon the executor to show a binding settlement of the claim, or a binding ratification of the claimed settlement. Sheldon v. Thornburg, 153 Iowa 622, 133 N. W. 1076; Kern v. Kiefer, 204 Iowa 490, 215 N. W. 607; section 11962, Code of 1939. We do not think that the executor has met the burden cast upon him. As a matter of fact, the record shows that the referee in his finding evidently proceeded upon the theory that the burden was upon the claimant to show that Graham did not have authority to bind the claimant in making a settlement. In his finding the referee assumes that certain things must have been done, all in the face of a silent record. The referee assumes that because of its size the RFC was not in a position to consider all relatively minor matters. He attaches significance to the fact that the claim was signed and verified by the acting manager, who recited therein that he had authority to execute and file the petition. In his finding he refers to the stipulation that Graham was a field representative of the RFC and that his duties were to collect indebtedness and receive payments on account of any notes held by the corporation. He further states that the conclusion was inescapable that Graham represented to the executor and Henry Thornwall that he had authority to do what he did. We quote from the finding of the referee as shown in his report:

"There may have been no express statement by him that he had authority to do what he was doing and there is no evidence in the record that he made any such statement but his conduct amounted to just that, namely, that he was carrying out

his duties within the scope of his authority. Had that not been the case, there would have been something in this record to show that he was taking the proposed settlement home to submit to his employer for approval.''

There is no fair inference in the record to support such conclusion.

The referee did not base his conclusion that Graham was an agent of the RFC with authority to settle or compromise upon any express statement of Graham, but rather upon the ''apparent authority'' of such person. The record is barren of any evidence that the RFC did anything which would have had a tendency to lead the executor or Henry Thornwall to believe that Graham had any authority to settle or compromise the claim for less than the amount due. In effect, the referee seems to stress the fact that inasmuch as Graham, a representative of the RFC, came to see Troup, he must have had authority to settle the claim. The bare fact that Graham was there would be of slight weight upon the question of his authority. Both Troup and Henry Thornwall ''assumed'' that Graham had authority to settle and compromise. Henry said: ''We took for granted that Mr. Graham was the representative of the claimant's office.'' Troup on two occasions stated that Graham represented himself as a representative of the RFC. He also said that he ''assumed'' a definite settlement was arrived at, and it was his ''understanding'' that the amount was to be a full compromise settlement.

It is a well-settled rule of law that the apparent authority of an agent is not measured by what the agent represents himself to be or his authority, but by what the principal knowingly permits or holds him out to third persons as authorized to do. Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N. W. 2d 646; Federal Land Bk. v. Union Bk. & Tr. Co., 228 Iowa 205, 290 N. W. 512, 292 N. W. 852; First Trust JSL Bk. v. Diercks, 222 Iowa 534, 267 N. W. 708; Holden v. Batten, 215 Iowa 448, 245 N. W. 750.

The record shows that the duties of Graham were to collect indebtedness and receive payment on account of any notes held by the RFC. The word ''payment'' or ''collect''

means in full and not in part or a compromise for a part. Glenwood Lbr. Co. v. Hammers, 226 Iowa 788, 285 N. W. 277; McCarver v. Nealey, 1 (G. Greene) Iowa 360, 362. In this case the court said:

"The principle is not controverted that an attorney has no right to receive anything but money in satisfaction of a demand placed in his hands for collection, unless especially authorized to do so by his client. And it is equally well settled, that if he applies such a claim in payment of his own debts, his client is not bound thereby, and may still proceed against the defendant. Gullet v. Lewis, 3 Stew. 23; Cost v. Genette, 1 Porter, 212, 34; Craig v. Ely, 5 Stew. and Porter, 354; Tankersley v. Anderson, 4 Desaus. 45; Smock v. Dade, 5 Rand. 639; Langdon v. Potter, 13 Mass. 320."

In Bigler v. Toy, 68 Iowa 687, 28 N. W. 17, this court held that an attorney who has a claim for collection has no power, in the absence of special authority, to accept as payment a less amount of money than the whole sum due. A rule otherwise would raise all manner of complications and would lead to grievous abuses. The court in the last-cited case adds that such a doctrine is elementary. In this case the executor has not shown any special authority to Graham to compromise the claim or to accept any sum less than the full amount due. The executor not having shown that Graham had authority, either express or apparent, to compromise the claim for less than the amount due, it follows that the action of the lower court in confirming the report of the referee cannot be approved. The executor argues that the compromise agreement is supported by a sufficient consideration in that Henry Thornwall, a stranger to the transaction, obligated himself to make payment of the amount alleged to have been agreed upon. We have already held that the executor had failed to show that the alleged compromise agreement of October 26th was binding upon the RFC. However, in view of the fact that the parties have discussed the point raised, we will consider it.

Henry Thornwall claims that he is a "stranger" to the transaction, and, such being his status, that his obligation to pay the amount agreed upon is sufficient consideration to

support it. As we read the record, we do not find that Henry was a stranger to the transaction within the meaning of the law. While he is not a party, in a strict sense, yet he is vitally interested because this claim might be urged against the property which he receives under the will of his mother, the maker of the notes. We think that the record shows affirmatively that he is not a stranger to the transaction. It is conceded that Henry is to receive .538 per cent of the real estate, subject to the payment of debts and charges against the estate. Consequently, any claims collected through the medium of the real estate of decedent would fall heaviest on the share devised to Henry Thornwall. In paying such claims thereby his share of the real estate would have to bear .538 and the shares of his brothers and sisters .462 per cent. In legal effect, Henry was not a stranger to the alleged settlement. Durante v. Eannaco, 65 App. Div. 435, 72 N. Y. S. 1048; Hoffman v. Habighorst, 49 Or. 379, 89 P. 952, 91 P. 20. The settlement as claimed by Henry was highly to his advantage and the record abundantly shows that he was anxious to have it go through and was active in its negotiation.

While the executor and Henry Thornwall claim that in the negotiations they entered into a binding settlement wherein the claim of the RFC was compromised, we think, under the record, that the very most that can be said is that it amounted to an offer on the part of the estate and Henry Thornwall to compromise the estate debt. Possibly it may have been suggested by Graham. Under our holdings he would have no authority to settle or compromise except by payment in full. Moron v. Tuttle, 211 Iowa 584, 233 N. W. 691. Restatement of the Law, Agency, section 72 (a).

Certainly the remittance was not accepted and was returned to the sender. Such being the case, there can be no ratification. The burden would be upon the executor to show ratification. Ratification arises where a party alleged to have ratified has full knowledge of the facts, and if done without such knowledge there is no ratification. Marion Sav. Bk. v. Leahy, 200 Iowa 220, 204 N. W. 456; 2 C. J. S., Agency, 1359, 1361, section 136 c., Ratification; Miller v. Chatsworth Sav. Bk., 203 Iowa 411, 212

N. W. 722. We think that no other conclusion can be arrived at under the record. On this point we again quote the evidence of Henry Thornwall:

"* * * Us boys agreed to pay the compromised amount and when they refused to accept that I told Mr. Bale we were out of it, they would have to go through the estate if they wanted to get the balance we owed them."

Troup, the executor, testifying as to the same matter, said:

"I have my letter accompanying this draft, in which I asked we consider this as a full and final settlement and for a release, but it wasn't accepted, except they would accept as applying. We objected to that applying when it was to constitute a full settlement."

That an offer to settle or compromise not accepted is not binding is too well settled to call for citation of authority.

In conclusion, we are of the opinion that the court erred in overruling the objections and exceptions to the report of the referee. We think that the record shows affirmatively that claimant is entitled to have its claim filed allowed in full against the estate.—Reversed and remanded.

All JUSTICES concur.